**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**(Tallahassee Division)**

CHRISTOPHER SHANE TOTH and
JAMIE ANN PRINCIPATO

        Plaintiffs,                Case No.:

v.

THE FLORIDA STATE UNIVERSITY       **JURY TRIAL REQUESTED**
BOARD OF TRUSTEES

        Defendant.

_____/

## COMPLAINT

Plaintiffs Christopher Toth and Jamie Principato, by and through their undersigned counsel, file this complaint against Defendant Board of Trustees of the Florida State University ("FSU") for violating state and federal anti-discrimination laws that require public entities to provide equal opportunity to people with disabilities. They allege as follows:

### I.    INTRODUCTION

1.    Christopher Toth is an FSU undergraduate who first matriculated at FSU in the fall of 2008 with a full scholarship with the intention of securing a bachelor's degree in Computer Science. Mr. Toth is blind.

2.    Jamie Principato, also an FSU undergraduate, first enrolled in the fall of 2009 with the intention of pursuing a bachelor's degree in Psychology. Ms. Principato is also blind.

3.    To obtain a bachelor's degree, Florida law requires every FSU student to successfully complete, or test out of, at least two college level math courses by the end of the student's sophomore year. Half of these credits may be through the Statistics Department, but

the remainder must be earned from courses offered by its Department of Mathematics. FSU will not permit a student to register for classes who has not received credit for two mathematics classes before the commencement of his or her junior year.

4.      In addition, many majors require mathematics courses as prerequisites.  For a bachelor's degree in Computer Science, FSU requires students first to complete MAC 1140, and then several higher-level math classes, before they are eligible to take computer science classes. Psychology degrees require completion of MAC 1105 prior to taking a required class in statistics, which is a requirement for a bachelor's degree in Psychology.

5.      By denying Mr. Toth and Ms. Principato an opportunity to participate in FSU's educational programs on an equal basis, FSU has discriminated against Mr. Toth and Ms. Principato on the basis of their vision impairments.  For example, Mr. Toth and Ms. Principato were denied equal access to the course materials used in FSU's math classes.  FSU's Department of Mathematics uses software, called eGrade, to display the content of homework, quizzes and tests for its classes.  eGrade is needlessly inaccessible to blind students, like the Plaintiffs, who access digital information using software called "screen access" or "screen reader" software. Additionally, FSU has a textbook, used in many math courses, that is only available in a print format.  FSU denied Mr. Toth's request for a Braille copy of this textbook.  Although each semester FSU and each Plaintiff agree on an accommodation plan, FSU has consistently breached its obligations under that plan for each Plaintiff.

6.      Because of FSU's intentional acts of discrimination, neither Mr. Toth nor Ms. Principato has been able to successfully complete the math courses required to progress toward their respective degrees.

7.      Because FSU's discriminatory acts have prevented Mr. Toth from successfully completing the required math classes, he has been delayed by at least three years in attaining a bachelor's degree in Computer Science.

8.      Similarly, FSU's discriminatory acts have prevented Ms. Principato from completing her required math class and, as a result, may prevent her from graduating after four years of college.  She has also been forced, as a result of this discrimination, to take a statistics course before acquiring the necessary foundation in math, which, in turn, has hurt her grades and inhibited her progression toward her degree.

9.      Although Mr. Toth and Ms. Principato's college tuition is now funded through Florida's Department of Blind Services ("DBS"), both must pay to retake the math courses that, as a result of FSU's discrimination, they were unable able to pass.

10.     Mr. Toth and Ms. Principato have suffered both monetary damages and severe emotional distress due to the intentional and reckless acts of FSU and its employees.

## II.      JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*, and Section 504 of Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and pendent jurisdiction over Plaintiffs' claim under Florida law.

12.     Plaintiffs are residents of Tallahassee, Florida.  Defendant's headquarters is located in Tallahassee Florida, and the acts and injuries complained of herein occurred in Tallahassee, Florida.

13.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because Defendant does business in this district, acts constituting violations of the ADA and Section 504 complained of occurred in this district, and Plaintiffs reside in this district.

## III.   THE PARTIES

14.     Christopher Toth entered FSU in August 2008 with a full State scholarship that had been awarded for his outstanding academic achievements.  Because of his strong interest in computers and natural abilities in programming, he intended to major in Computer Science.  If FSU permits him to do so, Mr. Toth would begin his fourth year at FSU in the fall of 2011.

15.     As a result of developing Retinoblastoma in early infancy, Mr. Toth has two prosthetic eyes.  He is a proficient Braille reader and, for digital text, he uses screen reading software, particularly Job Access with Speech ("JAWS").  JAWS is a program that converts text that is displayed visually on a computer monitor into synthesized speech.  JAWS can read whatever is on a computer screen, as long as the digital material is properly coded.  A proficient JAWS user can emulate a sighted person reading visually, in that the JAWS user can use keystrokes to move through the text, change the speed, receive audible cues concerning paragraphing, punctuation and other organizational information, and navigate back and forth through the data with automaticity and independence.

16.     Before enrolling at FSU, Mr. Toth had never made use of a human reader as an accommodation.  When Mr. Toth took the ACT in high school, for example, he used both Braille and audio aids.

17.     Mr. Toth grew up in Florida and attended public elementary and middle schools. He attended the Florida School for the Deaf and Blind for high school, where he excelled.  He took honors and AP classes at the local public school and also completed courses at a local

community college. In the summer after eleventh grade, Mr. Toth worked in the Harris Communications Laboratory at the University of Florida. He graduated from high school in the spring of 2008 as salutatorian. His academic achievements earned Mr. Toth a "Florida Bright Futures" scholarship to finance his undergraduate education.

18.  Mr. Toth began to develop computer software while in high school.

19.  He created and launched a popular online program that allows blind computer users to have nonvisual access to their Twitter accounts through an innovative integration of Twitter and a user's screen reader. He has also released a program called "Hope" that allows blind users to have nonvisual access to Pandora Radio. He is currently developing computer games for the blind.

20.  Although Mr. Toth had taught himself computer programming to a high degree of proficiency, he enrolled at FSU believing that a degree in Computer Science from FSU would enhance his opportunities to make a career in computer science.

21.  FSU offers both a B.S. and a B.A. in Computer Science. Mr. Toth wants to graduate with a B.S., the more scientifically rigorous of the two Computer Science degrees. Certain math courses are a prerequisite to the computer science classes needed for either degree.

22.  Ms. Principato is about to begin her third year at FSU. She was admitted in the fall semester 2009 and is a Psychology major. Her college tuition and related expenses have been funded by DBS. If FSU permits her to do so, Ms. Principato would begin her third year at FSU in the fall of 2011.

23.  Ms. Principato was born with Bilateral Sclerocornea, a condition that causes the whites of her eyes to extend over the corneas. She uses screen access software, primarily ZoomText, a program that magnifies the information displayed on a computer screen and

similarly allows a user to navigate by keystrokes within the text. On occasion she also uses JAWS. Although Ms. Principato can read some large-print documents, she experiences eye fatigue when doing so.

24.     Ms. Principato attended public elementary and middle school in Cape Coral, Florida. She began to attend Fort Myers High School, but it could not provide accessible honors classes, so she was home schooled and took community college classes. She graduated from high school in the spring of 2009.

25.     Ms. Principato is interested in cognitive psychology. Because she knew before she enrolled that FSU has undergraduate and graduate programs for those who desire to become teachers of students with visual disabilities, she assumed that FSU's programs and activities would be fully and equally accessible.

26.     Defendant, The Florida State University Board of Trustees, is the entity responsible for administering Florida State University, and has the power to sue and be sued pursuant to § 1001.72, Florida Statutes.

27.     FSU belongs to and is part of the Executive Branch of Florida State government and is, therefore, a government entity under Title II of the ADA, 42 U.S.C. § 12131, *et. seq.*

28.     FSU receives federal financial assistance in many forms, including, but not limited to, direct grants of assistance as well as student financial aid, and is, therefore, required to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

29.     As a condition of receiving federal funds from the Department of Education, FSU annually signs a Certificate of Compliance certifying that it is in compliance with Section 504 of the Rehabilitation Act.

## IV.     STATEMENT OF FACTS

**2008—2009 Academic Year**

30.     In August 2008, as an incoming freshman, Mr. Toth met with staff at the FSU Student Disability Resource Center ("SDRC") to register as a student with a disability. As required, he completed an intake interview with Tim Ebener, an adviser at the SDRC. As standard procedure, the SDRC developed an individual accommodation plan for Mr. Toth to alert his professors to the accommodations required for each class.

31.     Mr. Toth's accommodation plan requires a variety of classroom and testing accommodations, including that professors provide him with notes and handouts in electronic format prior to class sessions; copies of directions in auditory format; an in-class note taker, if requested; use of a tape recorder or laptop during class; accessible formats for tests; extended time on tests; and other accommodations.

32.     Because Mr. Toth's high ACT math score allowed him to skip more basic math courses, Mr. Toth enrolled in MAC 1140 (Pre-Calculus Algebra), a prerequisite for Computer Science courses, taught by Professor Mary Kutter.

33.     Professor Kutter announced on the first day of class that all students were to complete homework assignments and quizzes on the on-line eGrade system.

34.     eGrade is an online educational program used in math courses at FSU for homework, quizzes and tests. Students solve problems presented online and submit their answers electronically.

35.     When Mr. Toth opened the assigned eGrade website for MAC 1140 to complete his homework, he discovered that the eGrade system would not work with his screen reader.

Instead of the screen reader saying what was on the screen and presenting the multiple choice answers to him, it failed to verbalize the content of any of the questions or answers.

36.     Mr. Toth immediately sent an email to his professor and explained the situation. He also contacted Tim Ebener at the SDRC.

37.     Professor Kutter informed Mr. Toth that she would "look into" the situation, as did Mr. Ebener.

38.     During the first week of class, Mr. Toth also requested that FSU provide him with the math textbook used by his fellow students in a Braille format.  FSU initially promised Mr. Toth a Braille textbook, but subsequently reneged.

39.     FSU ultimately told Mr. Toth that, because the math textbook was not technically required for the course, and because it could not easily be made accessible, he would have to do without it.

40.     FSU also breached its promise, set forth in his accommodation plan, requiring Professor Kutter to provide Mr. Toth with notes in an accessible electronic format prior to the start of each class.

41.     Making eGrade accessible to screen access software would not have required any technological innovation and could easily have been made accessible with simple fixes that Mr. Toth later told the Mathematics Department how to do.

42.     Rather than make accessible the eGrade homework, quizzes and tests provided to sighted students, FSU proposed that Mr. Toth depend on someone with sight who would read the materials aloud.   Such a human reader is an ineffective and inadequate method for communicating this information to Mr. Toth.

43.     As a result of FSU's refusal to make the MAC 1140 course accessible, its failure to provide a Braille textbook and its failure to abide by Mr. Toth's accommodation plan, Mr. Toth was forced to drop the class and receive an "administrative drop."

44.     Despite FSU's refusal to provide Mr. Toth with the necessary educational materials to pass MAC 1140, Mr. Toth was provided with accessible materials for his other courses, all of which he passed.

45.     In light of the lack of adequate accommodations for MAC 1140, Mr. Toth decided to enroll for the spring of 2009 in a less demanding class, MAC 1105, College Algebra, with Professor Penny LeNoir.

46.     Mr. Toth discovered as soon as classes started that the same textbook is used for MAC 1105 and MAC 1140.

47.     Despite his request, FSU again refused to provide Mr. Toth with the Braille book he needed for the course.

48.     FSU also continued to refuse to make eGrade accessible and, instead, insisted that Mr. Toth use a human reader for homework, quizzes and tests.

49.     FSU refused to pay for a reader, insisting that the expense be borne by DBS.  By the time a reader was arranged, Mr. Toth had missed two weeks of course assignments and materials that had been available to his sighted peers.

50.     The reader FSU provided was a work-study student who had no mastery of the advanced math concepts needed to read or describe the course materials.  The reader would only read the math homework, at most, twice weekly and was only available for limited times.

51.     When the reader was not available, Mr. Toth was forced to ask friends to log in to his account and read him the questions.

52.     Because of FSU's failure to provide accessible materials or an effective accommodation, Mr. Toth had to drop the course. FSU recorded this as a "WD" on his transcript, indicating that he had withdrawn from the course and negatively affecting his transcript.

53.     Mr. Toth grew increasingly discouraged as he began to believe that he would be unable to major in Computer Science and would, therefore, be unable to pursue the career that had long been his dream.  His grades suffered and he spent most of his time alone or talking on the phone to Ms. Principato.  Because he expended so much energy unsuccessfully on MAC 1105 and grew depressed and frustrated, Mr. Toth's other grades suffered.

54.     Because his GPA dropped, he lost his Bright Futures scholarship.

55.     During Mr. Toth's freshman year, DBS covered his living expenses.  When his GPA dropped in spring 2009, DBS counselors informed him that unless he was able to demonstrate an ability to succeed in his courses during the summer, DBS would not fund his living expenses or provide tuition assistance.

56.     During the summer term, Mr. Toth enrolled in PSY2012, General Psychology and SOP3004, Social Psychology.  He received accessible textbooks and course materials for each course and received an A in each class.

57.     DBS then agreed to pay for his course work and Mr. Toth enrolled for the fall of 2009.  DBS has paid for Mr. Toth's tuition and expenses since fall 2009.

**2009—2010 Academic Year**

58.     Ms. Principato enrolled at FSU as a freshman in the fall of 2009.

59.     As had Mr. Toth, when she arrived at FSU, Ms. Principato developed an individual accommodation plan in conjunction with SDRC to give to her professors.

60.    In fall 2009, Mr. Toth, for the third time, and Ms. Principato, for the first time, enrolled in a mathematics course.  They decided to take MAC 1105 with Professor Annette Blackwelder, determined to work together to pass the course that they both needed to progress to secure their degrees.

61.    They both approached Professor Blackwelder on or before the first day of class to talk with her about their accommodation plans and accessibility concerns.

62.    Professor Blackwelder expressed surprise that Mr. Toth was trying to take MAC 1105 again, saying that "it is just going to be like last time."  She proposed that if he insisted on trying again, Mr. Toth should use a human reader for tests.

63.    Once again, Mr. Toth requested accessible materials and asked if eGrade could be made accessible.

64.    FSU again refused to provide accessible course materials, textbooks, or in-class presentations, and again required Mr. Toth to use a human reader.  Professor Blackwelder also refused to give Ms. Principato and Mr. Toth accessible versions of the class notes, as required in their accommodation plans.

65.    FSU continued to require use of the inaccessible eGrade system for all coursework assignments, quizzes and tests.

66.    Ms. Principato and Mr. Toth developed a system in which Ms. Principato attempted to create accessible class notes for Mr. Toth by reviewing class lectures on video. With her very limited vision, Ms. Principato would watch a segment of the video on a large screen TV, stop, type what she heard, and then start watching again.

67.    Although she prepared notes for some of the lectures, Ms. Principato found that the material became too complicated for her to transcribe and it routinely took her between 5 and

6 hours to transcribe 15 minutes of a videotaped lecture. Thus, keeping up to date would have required Ms. Principato to spend 60 hours a week transcribing.

68.    Ms. Principato expended enormous amounts of energy in reviewing the videos, creating graphs for herself and in assisting Mr. Toth, as well as trying to learn the material—all with significantly fewer resources than her sighted peers.

69.    Ms. Principato similarly struggled to prepare "homemade" tactile graphics so that Mr. Toth could feel the outline of the graphs and have some sense of the graphs' configuration. Because neither the Math Department nor the SDRC would provide accessible versions of the graphics that were a part of the course materials, Ms. Principato's efforts were necessary for Mr. Toth to complete some of the homework assignments.

70.    For tests and quizzes, the reader assigned to Mr. Toth would read the test problem to him. Mr. Toth would then retype the problem on his own computer. Some of the equations proved too complicated for the human reader to accurately describe.

71.    Midway into the semester, a quiz presented problems using graphs for the first time. Mr. Toth had assumed that any graphs would be presented in an accessible format. He was wrong and FSU told him that going forward he must bring materials for the reader to make tactile versions of the graphs during the tests. In the meantime, because he could not see the graphs, he received a failing grade on this test. Moreover, he was told that before he could use tactile materials to make graphs during subsequent tests, he would have to show the materials that would be used to Professor Blackwelder. The reader he used for quizzes would then attempt to make the graphs while the tests were ongoing.

72.    The Mathematics Department refused to honor Ms. Principato's SDRC-issued accommodation plan that allowed her to take weekly exams at the SDRC Testing Center. At the

Testing Center she could have used ZoomText to magnify the test. Instead, she was consigned either to a cramped room in the Math Department that was equipped with four computers that did not have ZoomText software, or in the case of the final exam, to the Math Department's faculty kitchen, where she attempted to concentrate while teachers ate and chatted.

73.    The Mathematics Department gave Ms. Principato paper copies of the tests, requiring her to using a hand-held magnifier to read the questions and record her answers. The Department's testing room was poorly lit and she had to sit and work between two computers that left her workspace completely in shadow, making it even more difficult for Ms. Principato to see the test questions. As a result, Ms. Principato was unable to read many of the questions.

74.    In addition to the unequal opportunity they were given to take quizzes and tests, both Ms. Principato and Mr. Toth were denied the opportunity to participate with their sighted peers in quiz preparation sessions. These sessions occurred in the classroom on test days immediately before the tests. Mr. Toth and Ms. Principato were told that on testing days they had to report directly to the Math Department testing room, so they could not participate in the review sessions that their sighted peers enjoyed.

75.    On a few occasions, Professor Blackwelder spent a few minutes with Ms. Principato reviewing math concepts and problems before her quiz began. Because Professor Blackwelder used a pen and paper to illustrate the math problems, Ms. Principato could not see the problems, so the review was not effective.

76.    Professor Blackwelder also used PRS Transmitters, a brand of "clickers," to take attendance for class and to award bonus points. Although another company sold accessible clickers, FSU acquired inaccessible clickers, thus preventing Plaintiffs from earning bonus points

like their sighted peers.  Again, Plaintiffs were denied this opportunity solely because they could not see.

77.     Mr. Toth and Ms. Principato each received a grade of "D" in MAC 1105, which is not a passing grade.

## The Mathematics Department's Intentional Refusal to Provide Accessible Materials

78.     Plaintiffs' experience with the Mathematics Department stood in contrast to their experience with most other classes at FSU.  Most professors in other departments abided by their accommodation plans.  Similarly, the SDRC provided materials for most of their other classes in a timely manner.  The Mathematics Department repeatedly refused to follow Mr. Toth and Ms. Principato's accommodation plans and refused to provide materials in an accessible format.

79.     Mr. Toth informed Professor Kutter during the first week of classes in fall 2008 that eGrade was inaccessible, and she discussed the problem with others in the Mathematics Department.

80.     Mr. Toth reported eGrade's inaccessibility to the SDRC during the first week of classes of fall 2008.  Both the Director and Associate Director of the SDRC were aware of eGrade's continued inaccessibility.

81.     In response to Mr. Toth's complaints about inaccessibility of the eGrade system, Professor Will Stiles, Director of Basic Mathematics, in the winter and spring of 2010, was non-responsive and, in fact, insulted Mr. Toth, including accusing Mr. Toth of being a poor student and insisting that Mr. Toth should have re-taken certain exams or completely re-taken MAC 1105.

82.     Rather than making the math classes accessible, Rita Sherrod, the Math Department's accessibility director, told Mr. Toth that he should find out if there was a college

for the blind, like Gallaudet University for the deaf.  When Ms. Principato asked Ms. Sherrod about that remark the following week, Ms. Sherrod said she had meant to suggest that Mr. Toth should attend a community college.

83.    In early 2010, Professor Stiles also refused to speak to Ms. Principato when she attempted to interview him for an English paper she was writing on the access barriers she was encountering.  When she complained to Professor Stiles about the inaccessibility of eGrade, he accused her of exaggerating her inability to see and attempted to blame her for failing MAC 1105, totally disregarding her complaints about eGrade's inaccessibility.

84.    Neither the SDRC nor the Mathematics Department ever told the Plaintiffs that FSU has a grievance process to address concerns by students like the challenges Mr. Toth and Ms. Principato were facing.

85.    Both students grew frustrated and depressed as they realized that they were neglecting other classes and were not doing well enough on quizzes to pass the math class.

86.    In June 2010, Ms. Principato filed a class complaint with the United States Department of Education, Office of Civil Rights, addressing the inaccessibility of eGrade.  As a result, on December 22, 2010, FSU promised the federal government that it would make eGrade fully accessible by the fall of 2011 and would follow students' FSU-provided accommodation plans regarding testing.  Subsequently, FSU has also agreed that a Braille textbook will be available for MAC 1105 and MAC 1140, which use the same book.

87.    Unfortunately, the Plaintiffs will not benefit from that settlement.  FSU has declined Plaintiffs' request that it waive the fees to re-take the class now that FSU will make the class accessible.  Moreover, DBS will not fund tuition for a class that a blind consumer has failed. It is not clear that Mr. Toth and Ms Principato can find funds to pay for that class.

88.     Additionally, FSU has blocked Mr. Toth and Ms. Principato from completing their class registrations for the fall of 2011.

**Other Acts of Discrimination by FSU**

89.     In addition to the discriminatory actions of FSU's Department of Mathematics, FSU engaged in additional discriminatory acts against the Plaintiffs.

90.     In fall 2010, Ms. Principato enrolled in Biology with Laboratory (BSC2010 and BSC2010-L).  She contacted the SDRC to request a human assistant for her lab work.  Bea Awoniyi, Director of the SDRC, assured Ms. Principato that the SDRC would provide a lab assistant for her.  Although Ms. Principato repeatedly reminded Ms. Awoniyi of her request, the SDRC failed to provide an assistant for Ms. Principato until ten weeks into the semester.  Ms. Principato was forced to withdraw from the laboratory portion of the class.

91.     The add-drop period for courses lasts one week. Because syllabi are not always available ahead of time, it is difficult for Plaintiffs to identify potential access barriers until classes begin.  Once their schedules are finalized, they request accessible materials through the SDRC.  It generally takes 2-3 weeks to obtain these materials, thus depriving them of timely access to course materials.

92.     Until fall 2010, the web page on which students registered for classes required students to respond to a visual CAPTCHA (Computer Automated Public Turing Test to tell Computers and Humans Apart).  This prevented Mr. Toth from independently registering for classes.  FSU continues to use a visual CAPTCHA to block access to the web page where students check progress within their majors.

93.     Many professors are now using iClickers in their classrooms.  These devices, like the PRS Transmitters mentioned above, are used to take attendance, obtain bonus points and

occasionally to take quizzes.  Students purchase iClickers from the FSU bookstore.  Accessible iClickers are commercially available, but the University refuses to stock them. Thus, Plaintiffs are unable to buy the accessible version on the same terms as students without visual disabilities.

94.     Because FSU's discriminatory acts have prevented Plaintiffs from completing the math requirement, FSU has, for the past four semesters, placed a "block" on Mr. Toth's record, preventing him from registering on-time for classes and requiring him to seek special permission from the registrar to register for classes.

95.     The Registrar has also suggested to Mr. Toth that he take college courses at a local community college.

**Impact of FSU's Discrimination on the Plaintiffs**

96.     DBS does not guarantee that it will pay for more than four years of college when a student is going to school full-time.  Thus, both Mr. Toth and Ms. Principato may lose their funding to complete their degrees.

97.     Furthermore, DBS will not pay for any student to take a course twice. Therefore, DBS will not pay for Mr. Toth and Ms. Principato to re-take MAC 1105.

98.     Since the fall of 2008, Mr. Toth has worked tirelessly to pass an FSU Math course and to retain his right to continue as an FSU student.  Based on the credits he needs to complete a degree in Computer Science, Mr. Toth is still at the level of someone completing his freshman year.  Although he has taken elective courses and fulfilled some general education requirements, he still must satisfy the math requirements and then complete all courses required for a Computer Science major.  Most courses must be taken in sequential order and some are only offered once a year.

99.     Ms. Principato was given special permission by the faculty of the Statistics Department to take a statistics course without having successfully completed MAC 1105.  Thus, she has been able to proceed with her major.  Unfortunately, because she could not master the concepts in MAC 1105 due to the inaccessible curriculum, she has failed to fully master more advanced course concepts and has struggled in statistics and biological sciences. She is particularly concerned that she will not have mastered the underlying math and statistics concepts that she will need to successfully move forward into a doctoral program in Cognitive Psychology.

100.    Mr. Toth's and Ms. Principato's experiences in the courses that discriminated against them were humiliating; they were not given an equal opportunity to learn the material, and the grades they received do not accurately reflect their knowledge and skill, but, instead, reflect their disabilities and the discrimination they suffered.

101.    Ms. Principato and Mr. Toth are emotionally exhausted, depressed and anxious from the on-going battle with FSU for the right to an equal opportunity to learn.

102.    Mr. Toth's economic prospects without a Computer Science degree are much lower than if he were able to obtain a degree.  Without a Computer Science degree, Mr. Toth will likely earn much less over his lifetime.  Even if he could start immediately taking courses towards the degree, he will have irretrievably lost at least three years.

103.    The law firm of Brown, Goldstein and Levy, LLP, and the Law Office of Matthew W. Dietz, P.L. have been retained by Plaintiffs, and Plaintiffs have agreed to payment of reasonable fees for their services herein.

## COUNT I
### Violations of Title II of the Americans with Disabilities Act
### 42 U.S.C. § 12131 *et seq.*

104.    Plaintiffs incorporate the allegations in paragraphs one to 103, as if alleged herein.

105.    The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, guarantees equal access for qualified individuals to the benefits of the services, programs or activities of a public entity.  42 U.S.C. § 12132 *et seq.*

106.    Title II of the ADA mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

107.    Florida State University, as a state-chartered and directed school, is a public entity under Title II of the ADA.

108.    Classes and facilities at FSU are services, programs or activities provided by the University.

109.    Plaintiffs' vision loss substantially limits major life activities.  Therefore, both Plaintiffs are individuals with a disability under the ADA.

110.    Plaintiffs were admitted based on all general requirements to be students at FSU and thus are qualified individuals entitled to the protections of the ADA.

111.    FSU has failed to meet its obligations to provide blind students with educational opportunities that are equal to those provided to students without disabilities. FSU has excluded Plaintiffs from participation in, denied them the benefits of, or otherwise discriminated against them in its facilities, services, programs or activities.

112.    FSU's actions constitute intentional discrimination on the basis of a disability in violation of the ADA, in that the University:  (1) has failed to maintain policies and procedures to ensure compliance with Title II, specifically policies that provide equal access and effective communication to individuals with disabilities; (2) has failed to ensure that communications with Plaintiffs were as effective as communications with non-disabled peers; (3) has failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) has failed to provide the reasonable modifications of policies, practices, and procedures set forth in plaintiffs' approved accommodation plans; (5) has purchased and deployed new equipment that is inaccessible to Plaintiffs after the effective date of the ADA; (6) has failed to provide educational opportunities and educational information in a manner that is timely, equally effective and equally integrated; and (7) has otherwise discriminated against Plaintiffs.

113.    As a result of the Defendant's actions, Plaintiffs have suffered actual damages, non-economic damages, emotional distress, embarrassment and humiliation.

114.    Plaintiffs have suffered and continue to suffer irreparable harm because of the actions of the Defendant: they have suffered and continue to suffer from discrimination and unequal access to Defendant's programs and activities and will not be able to graduate and enter the job market on-time, if at all.  As a result of Defendant's actions, Plaintiffs' grades do not accurately reflect their knowledge and skills, and they have been and continue to be denied full access to the knowledge intended to be communicated in their classes.

115.    As a result of FSU's wrongful conduct, Plaintiffs are entitled to injunctive relief pursuant to 42 U.S.C. § 12133.

116.    As a result of FSU's wrongful conduct, Plaintiffs are entitled to declaratory relief pursuant to 42 U.S.C. § 12133.

117.    The actions by FSU were done intentionally or with deliberate indifference to the protected rights of the Plaintiffs herein. As such, Plaintiffs are entitled to monetary damages pursuant to 42 U.S.C. § 12133 for each and every offense.

WHEREFORE, Christopher Shane Toth and Jamie Ann Principato demand judgment against Defendant the Florida State University Board of Trustees as follows:

A.    A declaration that FSU has violated, and continues to violate, the ADA by discriminating against Plaintiffs;

B.    A preliminary and permanent injunction to prohibit FSU from violating 42 U.S.C. § 12132, specifically that:

      i.    FSU must permit Mr. Toth and Ms Principato to register for the fall semester of 2011;

      ii.    FSU must waive tuition and fees for MAC 1105 and MAC 1140 for Mr. Toth and for MAC 1105 for Ms. Principato;

      iii.    FSU must eliminate the "D" grades received by Mr. Toth and Ms. Principato for MAC 1105 from their records;

      iv.    FSU must ensure that eGrade, iClickers, CAPTCHAs and any other educational technology it uses is accessible to students with visual disabilities;

      v.    In advance of the beginning of the class, FSU must provide all textbooks, teaching notes, tests, and other materials for MAC 1105, MAC 1140 and any other Mathematics courses taken by Mr. Toth or Ms. Principato in an accessible format, either Braille in the case of Mr. Toth or in an accessible electronic format that is compatible with JAWS and ZoomText;

vi.     FSU must develop appropriate procedures to ensure that it provides Plaintiffs syllabi, textbooks, and class materials in accessible formats on or before the first day of each class for which they are enrolled;

vii.    The SDRC and Mathematics Department must make openly available information about grievance procedures to all students seeking help; and,

viii.   FSU must train the faculty and staff of the Mathematics Department, Registrar's office and SDRC about the obligations of FSU to students with disabilities under federal law.

C.      Economic and non-economic damages for Plaintiffs;

D.      Plaintiffs' reasonable attorneys' fees, expenses, and costs of suit as provided by law; and

E.      Such other and further relief as the Court deems just and proper.

### COUNT II
### Violations of § 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794 *et. seq*

118.    Plaintiffs incorporate by reference all allegations contained in paragraph one through 103, as if alleged herein.

119.    Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

120.    Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such

assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . ." *Id.* § 794(b)(1).

121.   Florida State University receives federal grants, contracts, and other financial assistance, thereby subjecting itself to the requirements of Section 504.

122.   Plaintiffs are blind and were admitted based on all general requirements to be students at FSU.  They are, therefore, qualified individuals with disabilities under Section 504.

123.   FSU has, solely by reason of their disabilities, excluded Plaintiffs from participation in, denied them the benefits of, and otherwise discriminated against them in its facilities, services, programs or activities.  FSU's violation of Section 504 and its regulations denies Plaintiffs meaningful access to the public benefit of education at the University.

124.   FSU's actions constitute intentional discrimination on the basis of a disability in violation of the Section, in that the University:  (1) has failed to maintain policies and procedures to ensure compliance with Section 504, specifically policies that provide equal access and effective communication to individuals with disabilities; (2) has failed to ensure that communications with Plaintiffs were as effective as communications with non-disabled students; (3) has failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) has failed to provide the reasonable modifications of policies, practices, and procedures set forth in plaintiffs' approved accommodation plans; (5) has purchased and deployed new equipment that is inaccessible to Plaintiffs after the effective date of Section 504; (6) has failed to provide educational opportunities and educational information in a manner that is timely, equally effective and equally integrated; and (7) has otherwise discriminated against Plaintiffs.

125.   As a result of the Defendant's actions, Plaintiffs have suffered actual damages, non-economic damages, emotional distress, embarrassment and humiliation.

126.   Plaintiffs have suffered and continue to suffer irreparable harm because of the actions of the Defendant: they have suffered and continue to suffer from discrimination and unequal access to Defendant's programs and activities and will not be able to graduate and enter the job market on-time, if at all.   As a result of Defendant's actions, Plaintiffs' grades do not accurately reflect their knowledge and skills, and they have been and continue to be denied full access to the knowledge intended to be communicated in their classes.

127.   The actions by FSU were done intentionally or with deliberate indifference to the protected rights of the Plaintiffs herein. As such, Plaintiffs are entitled to monetary damages pursuant to Section 504, 29 U.S.C. §794a, for each and every offense.

128.   As a result of FSU's wrongful conduct, Plaintiffs are entitled to injunctive relief pursuant to Section 504, 29 U.S.C. § 794a.

129.   As a result of FSU's wrongful conduct, Plaintiffs are entitled to a declaratory relief pursuant to Section 504, 29 U.S.C. § 794a.

WHEREFORE, Christopher Shane Toth and Jamie Ann Principato demand judgment against Defendant FSU as follows:

A.   A declaration that FSU has violated, and continues to violate, Section 504 by discriminating against Plaintiffs;

B.   A preliminary and permanent injunction to prohibit FSU from violating 29 U.S.C. § 794, specifically that:

    i.   FSU must permit Mr. Toth and Ms Principato to enroll for the fall 2011 semester;

    ii.      FSU must waive tuition and fees for MAC 1105 and MAC 1140 for Mr. Toth and for MAC 1105 for Ms. Principato;

    iii.     FSU must eliminate the "D" grades received by Mr. Toth and Ms. Principato for MAC 1105 from their records;

    iv.     FSU must ensure that eGrade, iClickers, CAPTCHAs and any other educational technology it uses is accessible to students with visual disabilities;

    v.      In advance of the beginning of the class, FSU must provide all textbooks, teaching notes, tests, and other materials for MAC 1105, MAC 1140 and any other Mathematics courses taken by Mr. Toth or Ms. Principato in an accessible electronic format that is compatible with JAWS and ZoomText;

    vi.     FSU must develop appropriate procedures to ensure that it provides Plaintiffs syllabi, textbooks, and class materials in accessible formats on or before the first day of each class for which they are enrolled;

    vii.     The SDRC and Mathematics Department must make openly available information about grievance procedures to all students seeking help; and,

    viii.    FSU must train the faculty and staff of the Mathematics Department, Registrar's office and SDRC about the obligations of FSU to students with disabilities under federal law.

C.     Economic and non-economic damages for Plaintiffs;

D.     Plaintiffs' reasonable attorneys' fees, expenses, and costs of suit as provided by law; and

E.     Such other and further relief as the Court deems just and proper.

**COUNT III**
**Violations of Florida Accessible Electronic and Information Technology Act.**
**Fla. Stat. § 282.601 *et seq.***

130.    Plaintiffs incorporate by reference all allegations contained in paragraph one through 103, as if alleged herein.

131.    The Florida Accessible Electronic and Information Technology Act ("Tech Act"), Fla. Stat. §282.601 et seq., is a Florida statute that prohibits unlawful discrimination by state agencies in the access of electronic information and information technology.

132.    The Tech Act requires, inter alia, that state agencies develop, procure, maintain, or use electronic and information technology that is accessible to individuals with disabilities, including people who are blind, unless doing so poses an undue burden.  Fla. Stat. §282.603.

133.    Defendant violates the Tech Act by developing, procuring, maintaining, or using electronic and information technology such as eGrade, iClickers, CAPTCHAs and other technologies that are not accessible to individuals with disabilities.

134.    The actions by FSU were done intentionally or with deliberate indifference to the protected rights of the Plaintiffs herein. As such, Plaintiffs are entitled to monetary damages for each and every offense;

135.    As a result of FSU's wrongful conduct, Plaintiffs are entitled to injunctive relief;

136.    As a result of FSU's wrongful conduct, Plaintiffs are entitled to a declaratory relief.

WHEREFORE, Christopher Shane Toth and Jamie Ann Principato demand judgment against Defendant the Florida State University Board of Trustees as follows:

A.     Find and hold that Plaintiffs have suffered from Defendant FSU's acts of discrimination on the basis of disability in violation of the Florida Accessible Electronic and Information Act, and order specific injunctive relief as follows:

    i.    FSU must permit Mr. Toth and Ms. Principato to enroll for the fall 2011 semester;

    ii.    FSU must waive tuition and fees for MAC 1105 and MAC 1140 for Mr. Toth and MAC 1105 for Ms. Principato;

    iii.    FSU must eliminate the "D" grades received by Mr. Toth and Ms. Principato for MAC 1105 from their records;

    iv.    FSU must ensure that eGrade, iClickers, CAPTCHAs and any other educational technology it develops, procures, maintains, or uses is accessible to students with visual disabilities;

    v.    In advance of the beginning of the class, FSU must provide all textbooks, teaching notes, tests, and other materials for MAC 1105, MAC 1140 and any other Mathematics courses taken by Mr. Toth or Ms. Principato in an accessible electronic format that is compatible with JAWS and ZoomText;

    vi.    FSU must develop appropriate procedures to ensure that it provides Plaintiffs syllabi, textbooks, and class materials in accessible formats on or before the first day of each class for which they are enrolled;

    vii.    FSU must train the faculty and staff of the Mathematics Department, Registrar's office and SDRC about the obligations of FSU to develop, procure, maintain, and use electronic and information technology that is accessible to students with disabilities under the Tech Act.

B.     Economic and non-economic damages for the Plaintiffs;

C.     Plaintiffs' reasonable attorneys' fees, expenses, and costs of suit as provided by law; and

D.      Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial for all issues so triable.


June 29, 2011

s/ Sharon Krevor-Weisbaum
Sharon Krevor-Weisbaum
Brooke E. Lierman
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street
Suite 1700
Baltimore, Maryland 21202
Phone: (410) 962-1030
skw@browngold.com
bel@browngold.com

s/ Matthew W. Dietz
Matthew Dietz
Fla. Bar No: 0084905
LAW OFFICES OF MATTHEW W. DIETZ, P.L.
2990 Southwest 35th Avenue
Miami, Florida 33133
Phone (305) 669-2822
MatthewDietz@USDisabilityLaw.com